R. TRUMAN, Appellant, v. J. F. BISHOP *et al.*, Appellees.

1.   **Promissory Notes:** INDORSEMENT IN BLANK: PAROL EVIDENCE: VERDICT: EVIDENCE.   Where in an action against one upon his indorsement in blank upon a promissory note the defendant relied, as a defense thereto, upon proof of an oral agreement, alleged to have been made at the time of said indorsement, that the plaintiff was to take the note without recourse on the defendant, and the preponderance of the direct evidence to the fact of such agreement was with the plaintiff, but it appeared that the consideration received by the defendant for the transfer of said note was considerably less than the face value thereof, *held*, that a verdict for the defendant would not be set aside as not being supported by the evidence.

2.   **New Trial:** MISCONDUCT OF JURY: PREJUDICE.   Where a juryman, during the trial of a cause, disputed with the plaintiff, as to the testimony given by him at a former period of the trial, and then, in an offensive manner, called for the reading of the reporter's notes of such testimony, and afterwards said juryman and another engaged in a controversy with the plaintiff's counsel concerning the proper construction of certain documentary evidence, and because of such conduct the court instructed the jury that the points in the testimony

which were the subject of dispute were wholly immaterial, *held,* that while the conduct of the juryman was improper it could not be said in view of the instruction of the court that the plaintiff was prejudiced thereby.

3.  **Promissory Note:** LIABILITY OF INDORSER: INSTRUCTIONS TO JURY. The court instructed the jury that the law presumed from the defendant's indorsement, that he guaranteed the payment of the note, and that the burden of proof was upon the defendant to show that when he indorsed said note he did not *intend* to guarantee the payment thereof. *Held,* that in view of other instructions given by the court, and the fact that the jury found especially that there was an agreement that the plaintiff should take the note without recourse, the error in the instruction was without prejudice to the plaintiff.

4.  ——: ——: ——. A written contract made, pending the consummation of the transaction in question, recited, that the defendant S. had "indorsed and deposited" with one D. the note sued upon, and. the plaintiff asked the court to instruct the jury that if they found that the defendant S. signed said agreement, then they should not consider the testimony of said defendant respecting the agreement under which said note was taken by the plaintiff. *Held,* that the indorsement on the note was a part of the contract, and that being in blank, and the character of the indorsement not being defined by the contract, it was competent to show by parol that it was to be without recourse, and, therefore, the instruction was properly refused.

*Appeal from Creston Superior Court.*—HON. S. R. DAVIS, Judge.

MONDAY, OCTOBER 26, 1891.

ACTION upon a promissory note. There was a trial to a jury, resulting in a verdict and judgment for the defendant Schmitz. The plaintiff appeals.—*Affirmed.*

*Phillips, Day & Crosby,* for appellant.

*Thos. L. Maxwell* and *J. M. Milligan,* for appellee.

ROTHROCK, J.—I. The note in question is for the sum of four thousand dollars. The following is a copy thereof:

"$4,000.  SANTA ANNA, CAL., February 20, 1888.

"On or before two years after date, for value received, in gold coin of the government of the United States, I promise to pay to Carl Schmitz or order, at Santa Anna, California, the sum of four thousand dollars ($4,000), with interest from August 1, 1887, at the rate of ten per cent. per annum, until paid. Interest payable annually, and, if not so paid as it becomes due, to be compounded, and bear the same rate of interest as the principal; and, in case default should be made in the payment of any interest when due, both principal and interest to become due and payable immediately after such default, at the option of the holder of this note; both principal and interest payable in like gold coin.

"J. F. BISHOP."

The payment of this note, and another note for thirty-five hundred dollars, of even date therewith, and drawing a like rate of interest, was secured by a mortgage on certain real estate situated in the state of California. On the tenth day of April, 1889, the defendant Schmitz assigned the mortgage securing the payment of said notes to the plaintiff, and indorsed the notes in blank by writing his name on the back of the same, and delivered them to the plaintiff. In consideration for the notes and mortgage, the plaintiff conveyed to said Schmitz a farm in Union county, in this state, consisting of three hundred and sixty acres, and paid him one thousand dollars in money. The mortgage upon the land in California was foreclosed by the plaintiff, and the amount of the note for thirty-five hundred dollars was realized from the foreclosure. The note in controversy was, therefore, unpaid. It was duly protested for non-payment. When this action was brought, Bishop, the maker of the note, made no defense, and judgment was rendered against him for

*Marginal note:* 1. PROMISSORY notes: indorsement in blank: parol evidence: verdict: evidence.

the amount claimed. The defendant Schmitz answered, claiming that, at the time of the trade with the plaintiff, it was distinctly agreed and understood by the plaintiff and said Schmitz that the plaintiff was to take the note without recourse on the defendant Schmitz, and that he was to look solely to the defendant Bishop and to the mortgage security for payment.

That this is a valid defense, cannot now be called in question, and we do not understand counsel for the appellant to claim otherwise. The precise question was determined by this court in the case of *Harrison v. McKim*, 18 Iowa, 485, where it was held that, in an action by the indorsee against the indorser of a promissory note, on an indorsement made in blank, it is competent for the defendant to show by parol evidence that the plaintiff took the note thus indorsed without recourse.

But it is claimed that the evidence did not warrant the jury in finding that the note was indorsed without recourse, and that the verdict is the result of passion and prejudice against the plaintiff and his action. It is true that the defendant was the only witness who testified to the alleged agreement, and he was plainly contradicted by the plaintiff in his testimony. There were also at least two other witnesses who contradicted the testimony of the defendant on material facts. So far as the number of witnesses and their testimony is to be considered, the very decided weight of the evidence is with the plaintiff; and it is also to be conceded that the burden was on the defendant to establish the defense by a preponderance of evidence. But juries are always directed by the courts, and properly, too, that the preponderance of evidence is not necessarily to be determined by the number of witnesses who affirm or deny a given state of facts. There are other considerations to be taken into account, which we need not here discuss.

There is one line of evidence which the court permitted to be submitted to the jury over the objection of the plaintiff. The defendant was permitted to prove the value of the farm taken in exchange for the notes. He testified as a witness that the farm was worth fifteen dollars an acre, which would make the value of the farm not to exceed fifty-four hundred dollars. Another witness testified that it was of the value of five thousand dollars. This, with the cash payment of one thousand dollars, would make consideration paid for the notes amount to from six thousand dollars to sixty-five hundred dollars. The notes at that time, including the interest, amounted to over eight thousand dollars. In our opinion, the evidence under consideration was relevant to the issue. The contract of indorsement was in dispute. There was a conflict in the evidence upon the fact. It appears to us that the value of the land was a fact proper to be taken into consideration in determining whether the defendant's defense was well founded. It was at least to be considered for what it was worth. If the notes and mortgage were put into the trade at fifteen hundred dollars or two thousand dollars less than their face value and interest, it, to say the least, tends to corroborate the claim of the defendant that he did not make himself personally liable by the indorsement. This evidence is, in principle, the same as where there is a direct conflict in the evidence, as to the contract price of the property or of services, it is competent to show the actual value as corroborative of the claim made by one of the parties. See *Johnson v. Harder*, 45 Iowa, 677; *Delaware Co. Bank v. Duncombe*, 48 Iowa, 488, and *Misner v. Darling*, 7 N. W. Rep. (Mich.) 77; *Campau v. Moran*, 31 Mich. 280. We cannot disturb the verdict as being without support in the evidence.

II. It is further claimed by counsel for the appellant that certain jurors were guilty of such gross

**2. New trial: misconduct of jury: prejudice.** misconduct during the trial as to require the verdict to be set aside on that ground. The misconduct complained of is set out in the bill of exceptions as follows: "Be it further remembered, that during the taking of the testimony in said cause one of the jurors named Kirsch asked the plaintiff what he testified at a former period in the trial about having been in the office of the Madison House, and stated, in the presence of his fellow-jurors, that he understood the plaintiff Truman to testify that he had never been in the office of the Madison House; and then, in an imperious and commanding tone, he said that he called for the reading of Truman's testimony, as shown by the reporter's notes. Be it further remembered that, during the argument of the plaintiff's counsel to the jury, two of the jurors, Kirsch and Hall, engaged in a discussion and controversy with the plaintiff's counsel in regard to the meaning and construction of Exhibit C; and Kirsch stated that, as he understood the contract, it simply provided for a forfeiture of five hundred dollars in case either party failed to complete the undertaking; and the conduct and manner of both jurors was such that the court at the time remarked that the action of the jury was unusual and extraordinary; and, because of such conduct and manner the court gave to the jury instruction, numbered 8,* after he had completed the instructions intended to be given." We are of opinion that the jurors charged with misconduct did not conduct themselves in that orderly manner which usually prevails in courts of record in this state. It is always allowable, and we

*8. At the request of the plaintiff you are further instructed that it is wholly immaterial whether the defendant Schmitz left said notes with the witness Davenport, and gave the plaintiff a lien upon them pending the completion of the contract of sale of notes. His liability as an indorser would begin at the time he delivered the note to plaintiff. The question for you to determine is whether when Schmitz indorsed said note it was the agreement between himself and Truman that Truman was to look solely to Bishop and the mortgage on the California land for payment, and this you must determine from the evidence.

think courts generally approve, of jurors asking occa-
sional questions of witnesses while giving their testi-
mony.    But it is manifestly improper for a juror to
enter upon disputes, and call for the reading of minutes
of testimony previously given, and to enter upon a dis-
cussion and controversy with counsel in the case as to
the construction of written evidence.    But we cannot
say, in view of the instruction given by the court to
the jury which is referred to in the above extract from
the bill of exceptions, that the plaintiff was at all pre-
judiced by the unseemly and reprehensible conduct of
said jurors.

III.    Complaint is made of the first paragraph
of the charge to the jury.    So far as material to the
question, that part of the instruction is as
**3. PROMISSORY**
**note: liability** follows:    "So, if the person to whom a
**of indorser:**
**instructions** note is payable transfers it to another
**to jury.**
person, and writes his name upon the
back of the note, the law presumes that he guarantees
the payment of the note if the original maker of the
note refuses to pay it; and the burden of proof is upon
the indorser to show that when he indorsed it he did
not intend to guarantee such payment."    It is claimed
that this instruction is erroneous because the liability
of the indorser is thereby made to depend upon his
mere intention; that it may be a mere secret intention,
not disclosed to the indorsee.    This instruction should
have been more explicit.    But in view of the other
instructions given by the court, and in view of the fact
that the jury found specially that there was an agree-
ment that the plaintiff should take the note without
recourse, the error, if any, was without prejudice to
the plaintiff.

IV.    The plaintiff's counsel requested the court to
charge the jury as follows:    "If the contract (Exhibit
**4. —: —: —.** C) introduced in evidence was signed by
defendant and Truman, as testified to by

Truman and Davenport, then that contract, under the law, embraces the entire agreement of the parties, which cannot be added to, varied, modified or explained by the testimony of the defendant Schmitz; and, if you find that such agreement was signed as above stated, you will lay entirely out of the consideration of this question all the testimony of the defendant Schmitz as to the terms of the contract." It appears in evidence that when the terms of the exchange were agreed upon between the plaintiff and the defendant they did not have a description of the mortgaged land, and they entered into a written agreement touching their contract, which was drafted and held by one Davenport until the assignment and conveyance could be executed. This written contract is the one referred to in the instruction as "Exhibit C." It contains the following clause: "And R. Truman has deposited in the hands of D. Davenport five hundred dollars, and, when said Schmitz shall comply with his part of this contract, then, if R. Truman shall fail or refuse to comply with the same, he hereby forfeits to said Schmitz said five hundred dollars as liquidated damages, and said Schmitz has indorsed and deposited with D. Davenport the two notes above described." It is urged that because this written contract recited that the notes were indorsed by Schmitz, and deposited with Davenport, this was a full indorsement, made so by the written contract, and that it is not competent to contradict it by parol evidence. But in construing the contract reference must be had to the notes, and to the indorsement which was actually made thereon. The blank indorsement was a part of the contract, and it is competent to show by parol that it was agreed that it should be without recourse. Such evidence does not in any sense contradict the written contract. The notes were indorsed, and the contract does not define

the character of the indorsement.    That is to be ascertained by what was written on the back of the notes.

V.  The defendant attempted to appeal from a ruling of the court upon a demurrer to two counts in the answer.    We need not determine whether an appeal will lie in behalf of the appellee.    As we find that there is no error demanding a reversal of the judgment, the same will be AFFIRMED.